**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LASALLE BANK NATIONAL ASSOCIATION, as Trustee for the Registered Holders of LB-UBS Commercial Mortgage Trust 2003-C7, Commercial Mortgage Pass-Through Certificates, Series 2003-C7, acting by and through ING Clarion Capital Loan Services, LLC (f/k/a Clarion Partners, LLC), as Special Servicer, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) ) Case No. CIV-08-1019-F |
| ALAN E. ROBBINS, an individual, and MIRIAM DEXTER, an individual, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the court is Plaintiff's Motion for Summary Judgment, filed August 3, 2009 (doc. no. 28). Defendants have responded, and plaintiff has replied. Upon due consideration of the parties' submissions, the court makes its determination.

Background

This is a breach of guaranty case arising out of two guaranties executed by defendants. The two guaranties were executed by defendants on or about June 7, 2005, in connection with the assumption of a mortgage note by VTA Oklahoma City, LLC, which mortgage note evidenced a loan relating to Shepherd Mall in Oklahoma

City, Oklahoma. Plaintiff claims that it is the assignee and holder of the mortgage note and the guaranties.

On September 10, 2008, VTA Oklahoma City, LLC filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Western District of Oklahoma. Plaintiff claims that the bankruptcy filing triggered defendants' obligations under the guaranties. Plaintiff claims that defendants, jointly and severally, owe more than $34 million under the guaranties and have not satisfied that obligation. Plaintiff now seeks summary judgment in its favor on its claims against defendants for breach of the guaranties.

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Relevant Facts

The relevant facts are undisputed or viewed in a light most favorable to defendants, the non-moving parties. On or about August 21, 2003, Shepherd Mall Partners, L.L.C. executed a Mortgage Note (the "Note") in the principal amount of

$34,950,000 in favor of UBS Real Estate Investments, Inc. ("UBS"), which Note was secured by, among other things, a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing.  On or about August 21, 2003, John P. Bridwell, James E. Williams, and Norma L. Garrett (both individually and in her capacity as trustee of the D.W. Garrett Trust) executed an Indemnity and Guaranty Agreement (the "Original Guaranty") in favor of UBS in connection with and as further security for the Note. Section 1 of the Original Guaranty provides, in pertinent part, as follows:

> 1. Indemnitor hereby assumes liability as a primary obligor to the extent of, hereby unconditionally guarantees payment to Holder of, hereby agrees to pay, protect, defend and save Holder harmless from and against, and hereby indemnifies Holder from and against, any and all liabilities, obligations, losses, damages (including those resulting from the diminution in value of the Property as a result of subsection (d) below), costs and expenses (including, without limitation, attorneys' fees), causes of action, suits, claims, demands and judgments of any nature or description whatsoever (collectively, "Costs") which may at any time be imposed upon, incurred by or awarded against Holder as a result of:
>
> (a) fraud or intentional misrepresentation or failure to disclose a material fact by Borrower . . . or any guarantor or indemnitor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Borrower's obligations under the Loan Documents;
>
> (b) the gross negligence or willful misconduct of Borrower;
>
> (c) physical waste of the Property or failure to comply with laws which results in a forfeiture of all or any portion of the Property;

 (d) the breach of any representation, warranty, covenant or indemnification provision in the Loan Documents concerning environmental laws, hazardous substances or asbestos;

 (e) the wrongful removal or disposal of any portion of the Property after an Event of Default;

 (f) the misapplication or conversion by Borrower of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (C) any Rents following an Event of Default, or during a Sweep Period . . ., or (D) any Rents paid more than one (1) month in advance;

 (g) the failure to pay charges for labor or materials or taxes or other charges that can create liens on any portion of the Property; . . .

 (h) all tenant security deposits or other refundable deposits paid to or held by Borrower . . . which are not applied in accordance with the terms of the applicable Leases; and

 (i) the failure to obtain and maintain the fully paid for Policies . . . in accordance with <u>Paragraph 2</u> of the Security Instrument.

Notwithstanding anything to the contrary in any of the Loan Documents, (i) Holder shall not be deemed to have waived any right which Holder may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt secured by the Security Instrument or to require that all collateral shall continue to secure all of the Debt owing to Holder in accordance with the Loan Documents, and (ii) Indemnitor shall be liable for the full amount of the Debt in the event that (A) the first full monthly payment of principal and interest of the Note is not paid when due; (B) Borrower has failed or fails to maintain its status as a single purpose entity . . .; (C)

> Borrower fails to obtain Holder's prior written consent to any subordinate financing or other voluntary lien encumbering the Property; (D) Borrower fails to obtain Holder's prior written consent to any assignment, transfer, or conveyance of the Property . . .; (E) a receiver, liquidator or trustee of Borrower or Indemnitor shall be appointed or if Borrower or Indemnitor shall be adjudicated a bankrupt or insolvent, or *if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, . . . shall be filed by, consented to, or acquiesced in by, Borrower or Indemnitor . . . .*

Ex. 3 to plaintiff's motion (emphasis added) .[1]

In September, 2003, UBS purportedly assigned, sold and transferred its interest in the Note and all documents relating thereto to plaintiff.

On or about June 10, 2005, VTA Oklahoma City, LLC executed a Loan Assumption and Modification Agreement (the "Loan Assumption") with plaintiff, whereby VTA Oklahoma City, LLC assumed, among other things, the Note and Shepherd Mall Partners L.L.C.'s obligations thereunder. Section 4 of the Loan Assumption document provides, in pertinent part, as follows:

> 4. <u>Assumption of Obligations</u>. Assuming Borrower hereby assumes the indebtedness evidenced by the Note and all of the obligations, terms, covenants, conditions and agreements of every type and nature set forth in the Note, the Mortgage, the Assignment of Rents and the other Loan Documents, other than the Guaranty, in accordance with their respective terms and conditions, as the same may be modified by this Agreement.
>  . . .

Ex. 6 to plaintiff's motion.

On or about June 7, 2005, defendants executed a Substitution of Indemnitor and Assumption of Obligations of Indemnitor (the "Substitution and Assumption").

---

[1] In addition to the Original Guaranty, John P. Bridwell, James E. Williams, and Norma L. Garrett, in her individual capacity and in her capacity as trustee of the D.W. Garrett Trust, executed a Hazardous Substances Indemnity Agreement, on or about August 21, 2003.

Section 4 of the Substitution and Assumption document provides, in relevant part, as follows:

> 4. <u>Assumption of Obligations, Agreements and Liabilities by Assuming Indemnitor</u>. From and after the date of this Substitution Agreement, Assuming Indemnitor, jointly and severally, shall be obligated, liable and responsible for the performance of each and all of the obligations, liabilities and agreements of Original Indemnitor under, pursuant to, and in accordance with the Guaranty and Hazardous Substances Indemnity, as fully and completing as if Assuming Indemnitor had originally executed and delivered the Guaranty and Hazardous Substances Indemnity, including, without limitation, all of those obligations, agreements and liabilities, which would have, but for the provisions of this Substitution Agreement, been the obligations, agreements and liabilities of Original Indemnitor, without regard to when such obligations, agreements and liabilities arise, accrue or have arisen or accrued, and without regard to the indemnifying party then responsible or liable therefor at the time of such accrual. Assuming Indemnitor hereby agrees, jointly and severally to pay, perform, and discharge each and every obligation of payment and performance under, pursuant to and in accordance with the Guaranty and Hazardous Substances Indemnity . . . .

Ex. 5 to plaintiff's motion.

Defendants additionally executed a Guaranty Agreement (the "Second Guaranty") on or about June 7, 2005. Section 2.1 of the Second Guaranty provides, in pertinent part, as follows:

> Except as limited below, Guarantor, jointly and severally, hereby guarantees and becomes surety to Lender for the prompt and unconditional payment of the Liabilities, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt and unconditional performance of each term and condition to be performed by Borrower under the Loan Documents.

Section 2.2 of the Second Guaranty provides, in pertinent part, as follows:

6

>Notwithstanding the foregoing, the collective liability of the Guarantor hereunder shall be limited to Three Million Three Hundred Ninety-Seven Thousand One Hundred Twenty-One and 31/100 Dollars ($3,397,121.31) in the aggregate, such sum being ten percent (10%) of the unpaid principal balance of the Loan as of the date hereof (the "Guaranteed Amount").  The limitations set forth herein shall only apply to this Guaranty and shall not affect or limit the liabilities of each Guarantor with respect to (i) the Indemnity and Guaranty Agreement, dated August 21, 2003, executed by John P. Bridwell, James E. Williams, and Norma L. Garrett, both individually and as trustee . . . and (ii) the Hazardous Substances Indemnity Agreement, dated as of August 21, 2003 executed by Original Borrower and Original Guarantor, in favor of the Original Lender . . ., as assumed by each Guarantor in connection with the Loan Assumption.

Ex. 7 to plaintiff's motion.

In a letter dated September 9, 2008, plaintiff, through counsel, gave notice that an event of default had occurred and was continuing under the loan documents as a result of VTA Oklahoma City, LLC's failure to maintain with plaintiff the "Leasing Escrow Deposit."[2]  Plaintiff declared that the debt was immediately due and payable and demanded immediate payment of the entire outstanding debt.  A copy of the letter was sent to defendants.

---

[2] Paragraph 7(d) of the Loan Assumption provides, in pertinent part:

>On or before thirty (30) days from the date hereof, Assuming Borrower shall either (i) deposit with Lender the sum of One Million and 00/100 Dollars (the "Leasing Escrow Deposit") or (ii) deliver a letter of credit to Lender, pursuant to the terms and conditions contained in Section 6(c) of the Mortgage (the "Leasing LOC Delivery", and collectively with the Leasing Escrow Deposit, the "Leasing Escrow Obligation Delivery") . . . The failure to satisfy and comply with the Leasing Escrow Obligation Delivery, within the timeframe stated above, shall constitute an Event of Default under the terms of the Loan Documents . . . .

Ex. 6 to plaintiff's motion.

On September 10, 2008, VTA Oklahoma City, LLC, d/b/a Shepherd Mall, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Oklahoma.

Discussion

Plaintiff, in its motion, asserts that it is entitled to judgment as a matter of law on its breach of guaranty claims against defendants. Plaintiff contends that under the Substitution and Assumption, defendants agreed to be obligated for the performance of the Original Guaranty. Plaintiff asserts that under section 1 of the Original Guaranty, performance could be triggered if the borrower filed a voluntary bankruptcy petition. Plaintiff asserts that defendants' obligation under the Substitution and Assumption was triggered by VTA's voluntary filing of its Chapter 11 petition. Because defendants have not paid the amount due and owing, plaintiff maintains that defendants are in breach of the Substitution and Assumption and plaintiff is entitled to recover of defendant all amounts due and owing under the Note, which plaintiff calculates at $34,010,691.89.

In addition, plaintiff asserts that defendants are in breach of the Second Guaranty. Under that agreement, defendants agreed to guarantee all liabilities which included repayment of all sums due under the Note. Defendants' liability under the Second Guaranty was limited to $3,397,121.31. Plaintiff asserts that defendants have failed to pay the amounts due under the Second Guaranty and that they owe plaintiff $3,397,121.31 under the Second Guaranty. However, plaintiff clarifies in its motion that it is not seeking two recoveries, one based upon the Original Guaranty, which obligations were assumed under the Substitution and Assumption, and one based upon the Second Guaranty. Rather, it is seeking the total sum of $34,010,691.89, owed by virtue of the breaches of both the Substitution and Assumption and the Second Guaranty.

Defendants, in response, contend that plaintiff is not entitled to summary judgment for several reasons. Initially, Defendants assert the Original Guaranty must be considered as a whole to give effect to all of its provisions. According to defendants, when the Original Guaranty is viewed as a whole, plaintiff cannot establish that it creates liability for the debt based solely upon VTA Oklahoma City LLC's filing for bankruptcy protection. Defendants assert that the Original Guaranty contains dual triggers, both of which must occur before liability is imposed upon defendants. The first trigger, according to defendants, is any of the events set forth in clauses (a) through (i) of section 1 of the Original Guaranty. The second trigger, defendants argue, is the events further detailed in the second full paragraph of section 1, one of which includes the voluntary filing of bankruptcy by VTA Oklahoma City, LLC. Defendants maintain that even though the second trigger occurred, they are not responsible to plaintiff for the debt because the first trigger did not occur. Defendants contend that in making its arguments, plaintiff has ignored the first trigger, which is a mandatory prerequisite for imposing liability under the Original Guaranty.

Next, defendants contend that an ambiguity exists as to the scope of defendants' liability. Defendants point out that in the Second Guaranty, defendants' collective liability is limited to $3,397,121.31. Defendants maintain that the Second Guaranty fails to identify the scope of liability arising from the Substitution and Assumption. The Second Guaranty is confusing, defendants argue, as to whether they are liable under the Original Guaranty. Defendants contend that the Second Guaranty fails to place defendants on notice that their guaranty is not really limited and they may be personally liable for more than $34,000,000.

Defendants finally argue that plaintiff is not entitled to summary judgment because it has not established that it is the holder of the Note. Although plaintiff claims that it is the holder, defendants maintain that plaintiff has not offered any evidence that it is, in fact, in possession of the original Note, as required by Oklahoma

9

law. Because plaintiff has failed to satisfy that it is the holder of the Note, defendants contend that plaintiff may not seek relief against defendants.

Plaintiff, in reply, contends that the events set forth in clauses 1(a) through (i) of the Original Guaranty are known as "bad boy" acts, the occurrence of which render defendants liable for the actual damages resulting from such acts. Plaintiff contends that full recourse liability attaches if any of the triggers contained in the second full paragraph of section 1 occur. There is nothing in the language of section 1, plaintiff argues, to condition full recourse liability on the convergence of both (1) one of the "bad boy" acts set forth in clauses (a) through (i) and (2) a bankruptcy filing. As to the scope of liability, plaintiff maintains that the guaranties are not ambiguous. Plaintiff contends that under the Original Guaranty, defendants are liable for the full amount as a result of the occurrence of any of the specified events. Under the Second Guaranty, defendants are unconditionally liable for $3,397,121.21. Plaintiff contends that the Second Guaranty makes it clear that defendants are liable for the $34 million. In regard to whether it is a holder of the Note, plaintiff contends that the evidence submitted in support of its motion shows that it was in possession of the note. Nonetheless, plaintiff states that it will make the original of the Note available for review or the court may condition judgment upon production of the Note.

The obligations of a private-law guarantor are purely contractual. <u>Founders Bank and Trust Co. v. Upsher</u>, 830 P.2d 1355, 1361 (Okla. 1992). The meaning of the written contract is controlled by the intent of the parties at the time they entered into the agreement. <u>Lum v. Lee Way Motor Freight, Inc.</u>, 757 P.2d 810, 815 (Okla. 1987). The precise terms of the guarantor's undertaking and the extent of the promise given govern the breadth of the obligation. <u>Founders Bank and Trust</u>, 830 P.2d at 1361.

Contractual intent is to be collected from the whole instrument. <u>Lum</u>, 757 P.2d at 815. Where the language is clear and explicit, its purpose and meaning must be

10

ascertained from the face of the instrument without resorting to extrinsic evidence. *Id.* If the guaranty's language is ambiguous, the court must place itself, as far as possible, in the position of the parties when they contracted and must consider the circumstances surrounding the transaction and its purposes in addition to the instrument as drawn. *Id.* Whether a contract is ambiguous is a question of law for the court. *Id.* The court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision. Southern Corrections Systems, Inc. v. Union City Public Schools, 64 P.3d 1083, 1089 (Okla. 2002). Furthermore, the court is to read the terms of the guaranty in favor of the one who has parted with property in reliance on the collateral promise and hence against the guarantor. Founders Bank and Trust, 830 P.2d at 1361; *see also*, Riverside Nat. Bank v. Manolakis, 613 P.2d 438, 442 (Okla. 1980).

Applying these principles, the court concludes that the guaranties are not ambiguous. The court rejects defendants' arguments that their obligations under the Original Guaranty, which obligations were assumed by the Substitution and Assumption, were not triggered unless one of the events in clauses (a) through (i) occurred. The language of the Original Guaranty does not so provide. The court agrees with the plaintiff that the second full paragraph of section 1 of the Original Guaranty provides that defendants shall be liable for the full amount of the debt in the event VTA Oklahoma City, LLC files a petition for bankruptcy. In the case at bar, VTA Oklahoma City, LLC did, in fact, file a petition for bankruptcy. Because the petition was filed, defendants' liability was triggered. The court concludes that clauses (a) through (i) were not conditions precedent to defendants' liability under the Substitution and Assumption.[3]

---

[3] Although the relevant contractual language is clear, thus eliminating any need to consider the business purpose of the provisions in question, it is worth noting that it is entirely logical, from a business standpoint, that liability arises upon the occurrence of one of the (A) through (E) events

11

The court also finds that defendants' scope of liability under the guaranties is not ambiguous. Although section 2.2 of the Second Guaranty limited defendants' liability to $3,397,121.31, it also provided that "[t]he limitations set forth herein shall not apply to this Guaranty and shall not affect or limit the liabilities of each Guarantor with respect to (i) the Indemnity and Guaranty Agreement dated August 21, 2003 [the Original Guaranty] . . . ." *See*, Ex. 7 to plaintiff's motion. The court concludes that this language places defendants on notice that their guaranties are not limited to $3,397,121.31.

Further, the court finds that defendants have not raised a genuine issue of fact as to whether plaintiff is in possession of the Note so as to defeat plaintiff's request for summary judgment. (This is aside from the fact that, because defendants' liability arises from their status as guarantors, possession – or lack of possession – of the original note, as a negotiable instrument, does not have the legal significance that it would have if this were an action against the maker of the note. As against the maker, mere possession of the original has independent legal consequences. *See*, 12A O.S. 2001 §§ 3-301 and 3-308.)

The court notes that defendants have not challenged plaintiff's stated amounts of the unpaid principal balance, accrued and unpaid interest, additional default interest advance interest, late payment charge, special service fees, appraisal/ inspection/lockbox fees, and legal fees and costs in the bankruptcy case. The court finds that no genuine issue of material fact exists as to these amounts and that plaintiff is entitled to recover these amounts. As requested in its motion, the court concludes that plaintiff is entitled to judgment against defendants, jointly and severally, in the amount of at least $34,010, 691.89, plus any amounts which accrue prior to the time

---

(including bankruptcy) independently of the occurrence of one of the (a) through (i) events. The (a) through (i) series of events addresses risks entirely distinct from (and not logically connected to) the (A) through (E) events.

of judgment (*e.g.,* per diem rates of non-default and default interest), for defendants' breach of the guaranties.

Accordingly, Plaintiff's Motion for Summary Judgment, filed August 3, 2009 (doc. no. 28), is **GRANTED**.  Plaintiff is directed to submit an agreed-to form[4] of judgment for the court's consideration within 10 days after the date of this order.  If the parties are unable to agree to a form of judgment, they shall submit their respective proposed forms of judgment not later than 15 days after the date of this order.

DATED October 13, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-1019p006 rev .wpd

---

[4] The judgment need not contain any findings or other non-essential verbiage.  All of the findings relevant to the court's disposition of this action are set forth in this order.